1
2
3
4
5
6
7
8
9

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11

12

13

14

15

16

| | |
|---|---|
| **BENJAMIN BECK,**<br><br>                                     Petitioner,<br><br>        **v.**<br><br><br>**FRANK CHAVEZ,**<br><br>                              Respondent. | 1:11-cv-01303 AWI-MJS HC<br><br>**FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS** |

17

18        Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas

19   corpus pursuant to 28 U.S.C. § 2254. Respondent is represented by Jesse N. Witt of the

20   office of the California Attorney General.

21   **I.        PROCEDURAL BACKGROUND**

22        Petitioner is currently in the custody of the California Department of Corrections

23   pursuant to a judgment of the Superior Court of California, County of Tuolumne,

24   following his conviction by jury trial on November 3, 2008, of arson of an inhabited

25   structure. (Clerk's Tr. at 265.) The trial court also found Petitioner had committed two

26   prior felonies and sentenced Petitioner to serve a determinate term of nine years in

27   prison. (Id.)

28

1   Petitioner filed a direct appeal with the California Court of Appeal, Fifth Appellate

2   District, which was denied on March 11, 2010. (Lodged Docs. 4-8, 11.) On April 7, 2010,

3   Petitioner filed a petition for review with the California Supreme Court. (Lodged Doc. 9.)

4   The petition was summarily denied on May 20, 2010.

5   Petitioner filed the instant federal habeas petition on July 28, 2011. (Pet., ECF No.

6   1.) Petitioner raises two claims of relief: (a) that the trial court limited his right to cross

7   examination by excluding character evidence of the victim, and (b) that the trial court

8   violated Petitioner's rights by allowing statements of others to evidence a consciousness

9   of Petitioner's guilt. (See Pet.)

10   Respondent filed an answer to the petition on November 28, 2011. (Answer, ECF

11   No. 14.) Petitioner did not file a traverse.

12   **II.   STATEMENT OF THE FACTS**[1]

13
    Benjamin Luther Beck worked as a handyman at a private
14   campground in return for hourly pay and lodging in a trailer where, he, his
     fiancé, and her daughter lived. After his employer told him to look for other
15   employment and housing, he set fire to the deck of his employer's home
     and to his employer's woodpile.

16   (Lodged Doc. 10 at 2.)

17   **III.   DISCUSSION**

18   **A.   Jurisdiction**

19   Relief by way of a petition for writ of habeas corpus extends to a person in

20   custody pursuant to the judgment of a state court if the custody is in violation of the

21   Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. §

22   2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 fn.7 (2000).  Petitioner asserts that he

23   suffered violations of his rights as guaranteed by the U.S. Constitution.  In addition, the

24   conviction challenged arises out of the Kern County Superior Court, which is located

25

26

27   _____
     [1]The Fifth District Court of Appeal's summary of the facts in its March 11, 2010 opinion is presumed
     correct. 28 U.S.C. § 2254(e)(1).

28

1    within the jurisdiction of this court.  28 U.S.C. § 2241(d); 2254(a). Accordingly, the Court

2    has jurisdiction over the action.

3        **B.    Legal Standard of Review**

4        On April 24, 1996, Congress enacted the Antiterrorism and Effective Death

5    Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus

6    filed after its enactment.  Lindh v. Murphy, 521 U.S. 320, 326 (1997); Jeffries v. Wood,

7    114 F.3d 1484, 1499 (9th Cir. 1997). The instant petition was filed after the enactment of

8    the AEDPA; thus, it is governed by its provisions.

9        Under AEDPA, an application for a writ of habeas corpus by a person in custody

10   under a judgment of a state court may be granted only for violations of the Constitution

11   or laws of the United States. 28 U.S.C. § 2254(a); Williams v. Taylor, 529 U.S. at 375 n.

12   7 (2000). Federal habeas corpus relief is available for any claim decided on the merits in

13   state court proceedings if the state court's adjudication of the claim:

14       (1)  resulted  in  a  decision  that  was  contrary  to,  or  involved  an
         unreasonable  application  of,  clearly  established  federal  law,  as
15       determined by the Supreme Court of the United States; or

16       (2)  resulted  in  a  decision  that  was  based  on  an  unreasonable
         determination  of  the  facts  in  light  of  the  evidence  presented  in  the  State
17       court proceeding.

18   28 U.S.C. § 2254(d).

19           1.    Contrary to or an Unreasonable Application of Federal Law

20       A state court decision is "contrary to" federal law if it "applies a rule that

21   contradicts governing law set forth in [Supreme Court] cases" or "confronts a set of facts

22   that are materially indistinguishable from" a Supreme Court case, yet reaches a different

23   result." Brown v. Payton, 544 U.S. 133, 141 (2005) citing Williams, 529 U.S. at 405-06.

24   "AEDPA does not require state and federal courts to wait for some nearly identical

25   factual pattern before a legal rule must be applied. . . . The statue recognizes . . . that

26   even a general standard may be applied in an unreasonable manner" Panetti v.

27   Quarterman, 551 U.S. 930, 953 (2007) (citations and quotation marks omitted).  The

28

1    "clearly established Federal law" requirement "does not demand more than a 'principle'

2    or 'general standard.'" Musladin v. Lamarque, 555 F.3d 830, 839 (2009).  For a state

3    decision to be an unreasonable application of clearly established federal law under §

4    2254(d)(1), the Supreme Court's prior decisions must provide a governing legal principle

5    (or principles) to the issue before the state court. Lockyer v. Andrade, 538 U.S. 63, 70-

6    71 (2003).  A state court decision will involve an "unreasonable application of" federal

7    law only if it is "objectively unreasonable." Id. at 75-76, quoting Williams, 529 U.S. at

8    409-10; Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002). In Harrington v. Richter, the

9    Court further stresses that "an *unreasonable* application of federal law is different from

10   an *incorrect* application of federal law." 131 S. Ct. 770, 785 (2011), (citing Williams, 529

11   U.S. at 410) (emphasis in original).  "A state court's determination that a claim lacks

12   merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the

13   correctness of the state court's decision." Id. at 786 (citing Yarborough v. Alvarado, 541

14   U.S. 653, 664 (2004)). Further, "[t]he more general the rule, the more leeway courts

15   have in reading outcomes in case-by-case determinations." Id.; Renico v. Lett, 130 S.

16   Ct. 1855, 1864 (2010). "It is not an unreasonable application of clearly established

17   Federal law for a state court to decline to apply a specific legal rule that has not been

18   squarely established by this Court." Knowles v. Mirzayance, 129 S. Ct. 1411, 1419

19   (2009), quoted by Richter, 131 S. Ct. at 786.

20              2.    Review of State Decisions

21        "Where there has been one reasoned state judgment rejecting a federal claim,

22   later unexplained orders upholding that judgment or rejecting the claim rest on the same

23   grounds." See Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).  This is referred to as the

24   "look through" presumption. Id. at 804; Plascencia v. Alameida, 467 F.3d 1190, 1198

25   (9th Cir. 2006).    Determining whether a state court's decision resulted from an

26   unreasonable legal or factual conclusion, "does not require that there be an opinion from

27   the state court explaining the state court's reasoning." Richter, 131 S. Ct. at 784-85.

28

1   "Where a state court's decision is unaccompanied by an explanation, the habeas

2   petitioner's burden still must be met by showing there was no reasonable basis for the

3   state court to deny relief." Id. ("This Court now holds and reconfirms that § 2254(d) does

4   not require a state court to give reasons before its decision can be deemed to have been

5   'adjudicated on the merits.'").

6        Richter instructs that whether the state court decision is reasoned and explained,

7   or merely a summary denial, the approach to evaluating unreasonableness under §

8   2254(d) is the same: "Under § 2254(d), a habeas court must determine what arguments

9   or theories supported or, as here, could have supported, the state court's decision; then

10  it must ask whether it is possible fairminded jurists could disagree that those arguments

11  or theories are inconsistent with the holding in a prior decision of this Court." Id. at 786.

12  Thus, "even a strong case for relief does not mean the state court's contrary conclusion

13  was unreasonable." Id. (citing Lockyer v. Andrade, 538 U.S. at 75).  AEDPA "preserves

14  authority to issue the writ in cases where there is no possibility fairminded jurists could

15  disagree that the state court's decision conflicts with this Court's precedents." Id.  To put

16  it yet another way:

17        As a condition for obtaining habeas corpus relief from a federal
         court, a state prisoner must show that the state court's ruling on the claim
18        being presented in federal court was so lacking in justification that there
         was an error well understood and comprehended in existing law beyond
19        any possibility for fairminded disagreement.

20  Id. at 786-87.  The Court then explains the rationale for this rule, i.e., "that state courts

21  are the principal forum for asserting constitutional challenges to state convictions." Id. at

22  787. It follows from this consideration that § 2254(d) "complements the exhaustion

23  requirement and the doctrine of procedural bar to ensure that state proceedings are the

24  central process, not just a preliminary step for later federal habeas proceedings." Id.

25  (citing Wainwright v. Sykes, 433 U.S. 72, 90 (1977).

26              3.    Prejudicial Impact of Constitutional Error

27        The prejudicial impact of any constitutional error is assessed by asking whether

28

1   the error had "a substantial and injurious effect or influence in determining the jury's

2   verdict." Brecht v. Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551

3   U.S. 112, 121-22 (2007) (holding that the Brecht standard applies whether or not the

4   state court recognized the error and reviewed it for harmlessness).  Some constitutional

5   errors, however, do not require that the petitioner demonstrate prejudice. See Arizona v.

6   Fulminante, 499 U.S. 279, 310 (1991); United States v. Cronic, 466 U.S. 648, 659

7   (1984).  Furthermore, where a habeas petition governed by AEDPA alleges ineffective

8   assistance of counsel under Strickland v. Washington, 466 U.S. 668 (1984), the

9   Strickland prejudice standard is applied and courts do not engage in a separate analysis

10  applying the Brecht standard.  Avila v. Galaza, 297 F.3d 911, 918, n. 7 (2002).  Musalin

11  v. Lamarque, 555 F.3d at 834.

12  **IV.    REVIEW OF PETITION**

13          **A.    Claim One: Right to Cross-Examination**

14          Petitioner contends that the judgment of conviction must be reversed because the

15  trial court limited his cross-examination of prosecution witnesses as to whether other

16  people had a motive to harm his employers. (Pet. at 3.)

17                  1.    State Court Decision

18          Petitioner presented this claim by way of a direct appeal to the California Court of

19  Appeal, Fifth Appellate District. The claim was denied in a reasoned decision by the

20  appellate court and summarily denied by the California Supreme Court. (See Lodged

21  Docs. 4-8, 11.) Because the California Supreme Court's opinion is summary in nature,

22  this Court "looks through" that decision and presumes it adopted the reasoning of the

23  California Court of Appeal, the last state court to have issued a reasoned opinion. See

24  Ylst v. Nunnemaker, 501 U.S. 797, 804-05 & n.3 (1991) (establishing, on habeas review,

25  "look through" presumption that higher court agrees with lower court's reasoning where

26  former affirms latter without discussion); see also LaJoie v. Thompson, 217 F.3d 663,

27  669 n.7 (9th Cir. 2000) (holding federal courts look to last reasoned state court opinion in

28

1    determining whether state court's rejection of petitioner's claims was contrary to or an

2    unreasonable application of federal law under 28 U.S.C. § 2254(d)(1)).

3         In denying Petitioner's claim, the Court of Appeal explained:

4              Beck argues prejudice from improper limitation of cross-
         examination of prosecution witnesses as to whether other people had a
5         motive to harm his employer. The Attorney General argues the contrary.

6              The issues arises out of the district attorney's motion in limine "to
         prohibit the testimony of any witnesses about other people expressing a
7         hatred or dislike" for Beck's employer and his employer's wife. At the
         ensuing hearing, Beck's attorney opposed the motion, citing Evidence
8         Code section 1324 as his authority for admissibility: "Evidence of a
         person's *general reputation with reference to his character or a trait of his
9         character* at a relevant time in the community in which he then resided or
         in a group with which he then habitually associated is not made
10        inadmissible by the hearsay rule." (Italics added.) The court inquired,
         "What specific character trait would be at issue with respect to [Beck's
11        employer]?" His attorney replied, "That he is disliked by everybody and
         that he basically conducts himself unfairly with people that work for him
12        and rent from him, would be the broad, specific."

13             The prosecutor questioned whether Beck's proffer of evidence was
         within the scope of the statute's application to "a general reputation with
14        reference to his character or a trait of character," especially since "we
         have no idea how many people they're particularly referring to."
15        Additionally, he criticized the proffer of evidence as allowing the defense
         to "cast aspersions" on Beck's employer and his employer's wife without
16        giving the prosecution "an opportunity to cross-examine any people."

17             Beck's attorney argued that "the heart of the matter" was "a number
         of unhappy people who are associated with [his employer and his
18        employer's wife] in one capacity or another, who might have had the
         motive to set this fire." Emphasizing that "there were other people that had
19        problems with [his employer]," he argued that Beck "wasn't the only
         person that ever had an argument or disagreement with [his employer]"
20        and called his employer's identifying Beck to arson investigators as
         someone with whom he had a problem or someone whom he thought
21        might have set the fire as "very important."

22             Addressing Beck's attorney, the court observed that even if the
         motion in limine were granted "there would be nothing to prevent you from
23        questioning [Beck's employer] about other persons with whom he had
         disagreements in the park." He replied, "Right. That's true, Your Honor."
24        However, he urged the court to allow him "to ask their witnesses" not
         "what some one person may have said" but what the "general reputation"
25        of Beck's employer and his employer's wife was in the community,
         "*assuming* there are some foundational requirements met about their
26        knowledge of the community and how long had they lived there." (Italics
         added.)

27
               The court expressly offered the defense the opportunity to request
28

a later hearing, outside the presence of the jury, for the admission of "specific evidence" under Evidence Code section 1324. He cautioned Beck's attorney, however, that unless and until there were a "subsequent ruling" he should not adduce evidence of "any unsolicited statements by any witnesses that merely make reference to a statement that somebody other than the declarant did not like [Beck's employer or his employer's wife] for whatever reason." On those conditions, the court granted the district attorney's motion in limine on the grounds that "in this particular situation" the reputation of Beck's employer and his employer's wife was not "particularly relevant" and that neither the "character trait that's being identified as one that puts them in disfavor" nor the issue of "whether or not it's one that's accepted in the general community" was "clear." Beck, cites to no defense request in the record for a later hearing outside the presence of the jury to establish the foundational requirements of admissibility of "specific evidence" under Evidence Code section 1324.

The constitutional right of confrontation includes the right to cross-examine witnesses. (Pointer v. Texas (1965) 380 U.S. 400, 404.) Indeed, the primary purpose of the constitutional right of confrontation is to secure for the opponent the opportunity of cross-examination. (Davis v. Alaska (1974) 415 U.S. 308, 315-316.) Even so, "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." (Delaware v. Van Arsdall (1986) 475 U.S. 673, 679.) "Generally speaking, the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." (Delaware v. Fensterer (1985) 474 U.S. 15, 20, italics in original.)

Although few constitutional rights are more fundamental to an accused than the right to present evidence in one's own defense, the defense and the prosecution alike, in the exercise of that right, must comply with established rules of evidence and procedure designed to assure fairness and reliability in the ascertainment of guilt and innocence. (People v. Ayala (2000) 23 Cal.4th 225, 269, citing Chambers v. Mississippi (1973) 410 U.S. 284, 302.) Here, the record shows not an improper limitation of cross-examination but a proper insistence on compliance with established rules of evidence and procedure. There was no error.

(Lodged Doc. 10 at 2-5.)

2.   Legal Standard

The Sixth Amendment to the United States Constitution grants a criminal defendant the right "to be confronted with the witnesses against him." U.S. Const. amend. VI. "The 'main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination.'" Fenenbock v. Director of Corrections for California, 692 F.3d 910, 919 (9th Cir. 2012) (quoting Delaware v. Van Arsdall, 475

8

1    U.S. 673, 678 (1986)). The Confrontation Clause applies to the states through the

2    Fourteenth Amendment. Pointer v. Texas, 380 U.S. 400, 406 (1965).

3         However, "the Confrontation Clause guarantees only an opportunity for effective

4    cross-examination, not cross-examination that is effective in whatever way, and to

5    whatever extent, the defense might wish." United States v. Owens, 484 U.S. 554, 559

6    (1988) (emphasis, quotation marks, and citations omitted). see also Vasquez v. Kirkland,

7    572 F.3d 1029, 1035-38 (9th Cir. 2009) (no Confrontation Clause violation when defense

8    cross-examination of critical witness was limited because she was deaf, mute, and did

9    not know sign language).

10        Accordingly, "trial judges retain wide latitude insofar as the Confrontation Clause

11   is concerned to impose reasonable limits on such cross-examination based on concerns

12   about, among other things, harassment, prejudice, confusion of the issues, the witness'

13   safety, or interrogation that is repetitive or only marginally relevant." Van Arsdall, 475

14   U.S. at 679. Generally speaking, a court violates the Confrontation Clause only when it

15   prevents a defendant from examining a particular and relevant topic, such as bias:

16              The Supreme Court consistently has held that a Confrontation
           Clause violation occurs when a trial judge prohibits any inquiry into why a
17         witness may be biased. However, when some inquiry is permitted, trial
           judges retain wide latitude to impose reasonable limits on such cross-
18         examination. No Confrontation Clause violation occurs as long as the jury
           receives sufficient information to appraise the biases and motivations of
19         the witness.

20   Hayes v. Ayers, 632 F.3d 500, 518 (9th Cir. 2011) (internal citation omitted); see also

21   Olden v. Kentucky, 488 U.S. 227, 231 (1988). For example, in Van Arsdall, the Court

22   found a Confrontation Clause violation because the court had "cut[ ] off all questioning

23   about an event that the State conceded had taken place and that a jury might

24   reasonably have found furnished the witness a motive for favoring the prosecution in his

25   testimony." 475 U.S. at 679. Similarly, in Davis, an error arose when the trial court

26   granted a protective order prohibiting the defense from introducing a witness' juvenile

27   adjudication, not even for the purpose of demonstrating that the witness "might have

28

9

1   been subject to undue pressure from the police" or "under fear of possible probation

2   revocation." Davis v. Alaska, 415 U.S. 308, 311 (1974).

3         A limitation on cross-examination that excludes testimony on a particular topic

4   might violate the rule that "[restrictions on a criminal defendant's rights to confront

5   adverse witnesses and to present evidence may not be arbitrary or disproportionate to

6   the purposes they are designed to serve." Fenenbock v. Dir. of Corr. for Cal., 692 F.3d

7   910, 920 (9th Cir. 2012) (citing Michigan v. Lucas, 500 U.S. 145, 151 (1991).

8                   3.   Analysis

9         Petitioner asserts that the trial court limited his right to cross-examination by not

10   allowing him to present evidence of Petitioner's employer's general reputation. Petitioner

11   was allowed to question witnesses regarding any animus between the witness and the

12   employer, but could not present testimony that Petitioner's employer and his wife were

13   generally disliked by the community. Further, the trial court provided Petitioner an

14   opportunity to renew the request should Petitioner present foundational evidence

15   regarding a witness' knowledge of the community.

16         Before trial, the People filed an in limine motion to exclude evidence pursuant to

17   California Evidence Code §§ 1200 and 352. (1 CT 145-46.) Specifically, the prosecution

18   did not want evidence in the form of opinions of non-witnesses to be presented

19   regarding their dislike of Petitioner's employers. Petitioner's counsel argued that

20   Petitioner's employer's reputation was admissible under California Evidence Code §

21   1324. (4 RT 890-91.) The trial court granted the motion in limine finding that the general

22   reputation of the employer was not particularly relevant. However, the court allowed

23   Petitioner to renew the request if there were specific witnesses that Petitioner wished to

24   present after providing a proper foundation. (4 RT 896-97.) Further, the trial court stated

25   that there would be nothing to prevent the defense attorney from questioning the

26   employer about other persons with whom he had disagreements in the trailer park. (4 RT

27   894.)

28

1    The state court's holding that the trial court did not impermissibly limit Petitioner's

2    right to cross examination was not an unreasonable determination of Supreme Court

3    law. While the trial court limited Petitioner's right to attempt to introduce reputation

4    evidence of Petitioner's employer without proper foundation, Petitioner was still allowed

5    to present specific evidence of other witnesses' opinion of the employer and question the

6    employer regarding individuals that disliked him. Further, the court allowed Petitioner to

7    renew his request to present reputation evidence upon laying a sufficient foundation.

8    "The Confrontation Clause guarantees only an opportunity for effective cross-

9    examination, not cross-examination that is effective in whatever way, and to whatever

10   extent, the defense might wish." United States v. Owens, 484 U.S. at 559. Petitioner was

11   provided sufficient opportunity to cross-examine witnesses.  This Court cannot find that

12   that the state court's denial of the claim was an unreasonable application of Supreme

13   Court law. Petitioner is not entitled to habeas corpus relief.

14   **B.    Claim Two: Improper Jury Instruction**

15   Petitioner contends that the trial court erred in instructing the jury with CALCRIM

16   No. 371. Petitioner contends that the instruction informed the jury that evidence that

17   Petitioner's fiancée initially gave a false statement to the investigator could be evidence

18   of an attempt by Petitioner to suppress evidence. (Pet. at 3.)

19   1.    State Court Decision

20   Petitioner presented this claim by way of a direct appeal to the California Court of

21   Appeal, Fifth Appellate District. In the last reasoned state court decision, the Court of

22   Appeal explained:

23   **2. CALCRIM No. 371**

24   Beck argues prejudice from the instruction allowing the jury to infer
     consciousness of guilt. The Attorney General argues the contrary.

25

26   At the instruction-settling conference, the court put on the record
     the off-the record in-chambers objection Beck's attorney previously made
     to CALCRIM No. 371 and, reasoning "that sufficient inferences can be
27   drawn from the evidence that support giving this instruction," so instructed
     the jury:

28

> If someone other than the defendant tried to create false evidence, provide false testimony, or conceal or destroy evidence, that conduct may show the defendant was aware of his guilt, but only if the defendant was present and knew about that conduct, or, if not present, authorized the other person's actions. It is up to you to decide the meaning and importance of this evidence. However, evidence of such conduct cannot prove guilt by itself.

The argument in Beck's appellant's opening brief cites only to a single page of the reporter's transcript showing the court's order overruling his objection, a single page of the clerk's transcript showing the text of CALCRIM No. 371, and a single page of the reporter's transcript showing the prosecutor's argument to the jury. The argument in his appellant's reply brief cites to nothing at all in the record. So even though he predicates his argument on his fiancé's statement to the investigator, the arguments in his briefs cite to nothing in the record showing the testimony of any of the witnesses.

The rules of court require "[e]ach brief" to "[s]upport any reference to a matter in the record by a citation to the volume and page number of the record where the matter appears." (Cal. Rules of Court, rules 8.204(a)(1)(C), 8.360(a).) "The reviewing court is not required to make an independent, unassisted study of the record in search of error or grounds to support the judgment. It is entitled to the assistance of counsel." (9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 701, p. 769.) Arguments merely referring to the statement of facts, on the apparent assumption that the reviewing court will construct a theory of relief, misconstrue the respective roles of appellate counsel and the reviewing court. (See People v. Stanley, 10 Cal.4th 764, 793 (1995).) We have no duty to parse the statement of facts in the appellant's opening brief as to each argument in the appellant's opening brief and each argument in the appellant's reply brief to deduce which citations to the record in the statement of facts, if any, support each argument in the briefs. In the interest of judicial efficiency, however, we choose neither to order the briefs returned to Beck's appellate attorney for corrections and refiling within a specified time nor to order his briefs stricken with leave to file new ones within a specified time but instead choose to disregard the noncompliance and address the arguments in his briefs. (See Cal. Rules of Court, rules 8.204(e)(2), 8.360(a).)

On the page of the reporter's transcript to which the appellant's opening brief cites as showing the prosecutor's argument to the jury, the prosecutor argued as follows after quoting the text of CALCRIM No. 371:

> You know from [Beck's fiancé] this is a small trailer. Not much bigger than this courtroom is nothing, I heard nothing, I did nothing. Where do you think the defendant is when this is happening? He was right there. He's not right there, he's right there, he's nearby. He knows that she's lying. Heck, he's the one that took her out and showed her the fire, if you believe her version. And then – of course, then he came to the door and said, 'I know nothing except I went out at 10:00 in the morning.' And then she says that, and then [his fiancé's daughter] comes forward and says, 'I don't know what you're talking about. Especially about 9:30 to 10:15, I

don't know anything about that.'

The Attorney General cites to the record of testimony about the investigator's visit to Beck's trailer shortly after the fire. His fiancé's daughter testified that she, her mother, and Beck were all in the living room as the investigator stood outside talking with them through the open door that opened into the living room of the trailer. The investigator testified that after Beck's fiancé opened the door of the trailer he spoke through the open door, first with Beck and then with his fiancé, but that the only person he could see was the person with whom he was speaking since the door was partly covered by drapes to keep the cold out.

On that record, the Attorney General argues the jury could infer Beck heard and had the ability to correct his fiancé's statements to the investigator that no one left the trailer and that she knew nothing about the fire. Additionally, he argues, the jury could find Beck's silence showed his adoption of her statements and his consciousness of guilt.

Arguing the contrary, Beck relies on the rule of law "that proof of a criminal defendant's 'mere opportunity' to *authorize* a third person to attempt to influence a witness 'has no value as circumstantial evidence' that the defendant did so." (People v. Williams, 16 Cal.4th 153, 200 (1997), citing People v. Terry, 57 Cal.2d 538, 566 (1962), italics added.) Here, however, the issue is not whether, "if not present," Beck "*authorized* the other person's actions" but whether, "if ...*present*," he "*knew* about that conduct." (CALCRIM No. 371, italics added.) Williams and Terry are inapposite.

Beck relies, too, on the rule of law "that before a jury can be instructed that it may draw a particular inference, evidence must appear in the record which, if believed by the jury, will support the suggested inference." (People v. Hannon, 19 Cal.3d 588, 597 (1977), disapproved on another ground by People v. Martinez, 22 Cal.4th 750, 762-63 (2000).) Here, the court evaluated the evidence at the instruction-settling conference and found that the jury could draw sufficient inferences to justify instruction on consciousness of guilt before overruling Beck's objection to CALCRIM No. 371 and so instructing the jury. Hannon likewise is inapposite. There was no error.

(Lodged Doc. 11 at 5-8.)

2.   Legal Standard

Jury instructions are generally matters of state law for which federal habeas relief is not available, except insofar as an instructional error implicates the fundamental fairness of a trial in violation of due process or infringes upon an enumerated federal constitutional right. See Waddington v. Sarausad, 555 U.S. 179 (2009); Estelle v. McGuire, 502 U.S. 62, 71-72 (1991). For example, jury instructions may be challenged as constitutionally infirm if they had the effect of relieving the State of its burden of persuasion, beyond a reasonable doubt, on every essential element of a crime. Francis

13

1  v. Franklin, 471 U.S. 307, 313 (1985) (citing Sandstrom v. Montana, 442 U.S. 510, 520-

2  524 (1979)). Even if an error occurred in instructing the jury, however, habeas relief will

3  be granted only if the petitioner can establish that the error had a substantial and

4  injurious effect or influence in determining the jury's verdict. Hedgpeth v. Pulido, 555

5  U.S. 57, 129 S. Ct. 530, 532, 172 L. Ed. 2d 388 (2008) (holding that instructional errors

6  that do not "categorically 'vitiat[e] all the jury's findings" are subject to harmless error

7  analysis (alteration in original)); Brecht v. Abrahamson, 507 U.S. 619, 637 (1993).

8              3.    Analysis

9       First, Petitioner does not provide federal authority to support his claim that the jury

10 instruction violated his constitutional rights. Further, the state appellate court concluded

11 the instruction was a correct statement of law and properly applied in this case. Federal

12 courts are bound by state court rulings on questions of state law. Oxborrow v.

13 Eikenberry, 877 F.2d 1395, 1399 (9th Cir. 1989). Finally, Petitioner has not

14 demonstrated the instruction rendered his trial fundamentally unfair. Estelle, 502 U.S. at

15 72. While the instruction allowed jurors to infer that Petitioner was guilty based on his

16 fiancée's allegedly false comments to law enforcement made in Petitioner's presence,

17 the instruction clearly warned that the evidence of such conduct cannot prove guilt by

18 itself. The instruction clearly indicated that the jurors were to decide the meaning and

19 importance of the evidence. There is no indication that the instruction violated

20 Petitioner's constitutional rights or otherwise rendered his trial fundamentally unfair.

21 Accordingly, the conclusion of the state court was not contrary to federal law, and the

22 state court reasonably rejected Petitioner's claim. See Brecht, 507 U.S. at 637. The

23 Court recommends that Petitioner's claim be denied.

24 **V.    RECOMMENDATION**

25      Accordingly, it is hereby recommended that the petition for a writ of habeas

26 corpus be DENIED with prejudice.

27      This Findings and Recommendation is submitted to the assigned District Judge,

28 pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within thirty (30) days after

being served with the Findings and Recommendation, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Any reply to the objections shall be served and filed within fourteen (14) days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   July 31, 2013        /s/ Michael J. Seng

UNITED STATES MAGISTRATE JUDGE